UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

ROBERT NUCKLES     )
                   )
    Plaintiff,     )
                   )
v.                 )   CIVIL ACTION NO. 3:01 CV 753 (MRK)
                   )
UNITED STATES OF AMERICA,  )
                   )
    Defendant.     )
_____)

FILED
DEC 24  2 27 PM '03
U.S. DISTRICT COURT
NEW HAVEN, CONN.

## UNITED STATES' MOTION TO AMEND ITS ANSWER TO RAISE AN ADDITIONAL AFFIRMATIVE DEFENSE

### INTRODUCTION

COMES NOW Defendant United States of America, by and through counsel, to request leave of Court so that it may amend its Answer to raise the additional affirmative defense that plaintiff was the Government's "borrowed servant." As a borrowed servant, Nuckles' exclusive remedy against his "borrowing employer," the United States in this instance, consists of the benefits paid to him under the Longshore and Harborworkers' Compensation Act ("LHWCA"), 33 U.S.C. §§ 901-950. In this instance, the United States contends it was borrowing Mr. Robert Nuckles' services from Electric Boat Corporation, which was acting as the "lending employer," when he suffered his accident on May 14, 1999, for which he brings suit. As the result of this relationship, Nuckles is barred from bringing a tort suit against the United States.

The borrowed servant defense arguably falls within the scope of the United States' Fifth Affirmative Defense: failure to state a claim for which relief may be granted, which was properly pleaded within its Answer filed on June 27, 2001. The borrowed servant theory has not, however, been specifically asserted by the United States. In the interest of fairness, and to permit

adequate development of the issue by the parties, the United States moves to amend its Answer to add its this, its Seventh Affirmative Defense.

## FACTS

Plaintiff filed his Complaint on May 1, 2001, to which the United States timely responded on June 27, 2001. Plaintiff and defendant have diligently participated in the prosecution and defense of this case by focusing on the mechanics of the accident and resulting damages alleged. On December 16, 2003, Government counsel was interviewing fact witness Steven Bailey, a manager on the submarine overhaul project for the Government, who was previously deposed by plaintiff's counsel on February 20, 2002. In particular, Government counsel was exploring the issue of whether the Nuckles' accident site had been turned over to plaintiff's employer or whether the United States retained control of the area.

In the course of this discussion, Bailey indicated that the United States and Electric Boat had entered into a partnership arrangement that allowed mechanics, such as Nuckles, to be used interchangeably with those of Portsmouth Naval Shipyard Shipyard mechanics. (Portsmouth Naval Shipyard is a Government facility which, though located in Portsmouth, New Hampshire, managed submarine repairs at the United States Submarine Base, Groton, Connecticut.) Based on this arrangement, Electric Boat mechanics were treated as Government employees and vice versa. A Government foreman or supervisor would, without going through an Electric Boat intermediary, direct an Electric Boat employee to complete a task and could oversee the manner of its completion. This information is new to both plaintiff and defendant.

ARGUMENT

I.  A BORROWED SERVANT MAY NOT BRING A TORT SUIT AGAINST THE BORROWING EMPLOYER.

When two or more organizations could conceivably be an individual's employer, the borrowed servant test is applied to decide which is the actual employer. Am. Stevedoring Ltd., v. United States, 248 F.3d 54, 64 (2d Cir. 2001). The key issue is one of which entity had authoritative direction and control over a worker. Id.

The question of whether Nuckles was a borrowed servant of the United States could be dispositive of the case at bar because a borrowed servant's sole remedy against his borrowing employer is the collection of statutory workman's compensation benefits to which he is automatically entitled. In this case, Nuckles was engaged in maritime employment as a ship repairman. 33 U.S.C. § 902(3). As a result, his benefits are defined by the LHWCA.

Although the Second Circuit has not yet had the opportunity to affirm that the borrowed servant doctrine applies in the context of the LHWCA[1], other circuits that have considered the issue uniformly agree that it does. Most recently, in White v. Bethlehem Steel Corp., 222 F.3d 146, 149 (4th Cir. 2000), the Fourth Circuit held that the term "employer" as it is used with the LHWCA encompasses both general employers and employers who borrow a servant from the general employer. 33 U.S.C. § 905; White v. Bethlehem Steel Corp., 222 F.3d at 149. Such "a person can be in the general employ of one company while at the same time being in the particular employ of another 'with all the legal consequences of the new relation.'" White v. Bethlehem Steel Corp., 222 F.3d at 149. The Court is then faced with the task of ascertaining

---

[1]See O'Hara v. Weeks, 294 F.3d 55, 68 (2d Cir. 2002).

3

who has the power to control and direct the worker in question. Id.

Similarly, the Third Circuit, in Peter v. Hess Oil Virgin Islands Corp., 903 F.2d 935, 939 (3d Cir. 1990), held that the borrowed servant doctrine affords the borrowing employer immunity from suit through the workmen's compensation statutes, which make the worker's statutory benefits the exclusive compensation of the injured party. The term "employer," as it is used within the LHWCA, includes borrowing employers. Peter v. Hess Oil Virgin Islands Corp., 903 F.2d at 940. As a result, a borrowing employer is entitled to the immunity available to the general employer under 33 U.S.C. § 905(a). Peter v. Hess Oil Virgin Islands Corp., 903 F.2d at 941.

The Fifth Circuit has, for more than 30 years, shielded borrowing employers from tort liability under the LHWCA. The seminal case is Ruiz v. Shell Oil Co., 413 F.2d 310 (5th Cir 1969). This decision holds that a borrowed employee is entitled to worker's compensation under the LHWCA, an exclusive remedy that bars all common law tort actions against the employer, including a borrowing employer. Melancon v. Amoco Prod. Co., 834 F.2d 1238, 1243 (5th Cir. 1988). Thus, while the Second Circuit has not yet affirmed that the borrowing employer of a ship repairer is shielded from suit by the statutory protections of the LWHCA, the Third, Fourth and Fifth circuits have recognized the borrowed servant doctrine in a maritime context.

## II. LEAVE TO AMEND PLEADINGS IS TO BE FREELY GIVEN.

Given the significance of the borrowed servant defense and the recent discovery of the information that supports its assertion, the pertinent questions are whether the issue must be affirmatively pleaded and, if so, whether the Court, within its discretion should permit amendment. The Federal Rules of Civil Procedure allow a party to amend its pleading, given

4

leave of Court. Fed.R.Civ.P. 15(a). The rule provides that such leave is to be ". . . freely given when justice so requires." Id. The Supreme Court, in discussing the point, opined: "Rule 15(a) declares that leave to amend 'shall be freely given when justice so requires'; this mandate is to be heeded." Foman v. Davis, 371 U.S. 178, 182 (1962). Leave to amend should be permitted absent a showing of undue delay, bad faith or undue prejudice to the opposing party. Id.

Accordingly the Second Circuit, and its district courts, liberally allow the amendment of pleadings. See United States v. Cont'l Ill. Nat'l Bank and Trust Co. of Chi., 899 F.2d 1948, 1254 (2d Cir. 1989) (United States could amend pleading to assert "buyer in the ordinary course of business" defense); Tokio Marine and Fire Ins. Co., Ltd., v. Employers Ins. of Wausau, 786 F.2d 101, 103 (2d Cir. 1984) (amendment permitted to raise waiver of subrogation right defense); United States v. DCI Telecomm., Inc., 207 F.R.D. 32, 2002 U.S. Dist. LEXIS 6693, at **5 (S.D.N.Y. Apr. 19, 2002) (SEC could amend to charge additional securities violations); and, United States v. One 1984 Chevrolet Transtar, 623 F.Supp. 625, 626 (D.Conn. 1985) (United States allowed to amend complaint in forfeiture action).

III.   THE UNITED STATES SHOULD BE GRANTED LEAVE TO AMEND.

The presumption that leave to amend is to be granted may be overcome only if it results from undue delay or bad faith on the part of the moving party or is unfairly prejudicial to the nonmoving party. Foman v. Davis, 371 U.S. at 182; United States v. Cont'l Ill. Nat'l Bank and Trust Co. of Chi., 899 F.2d at1254. In this instance, there is no undue delay or bad faith on the part of the United States, which has raised the issue as soon as practically possible. As for unfair prejudice, plaintiff may have to expend effort to meet this defense, but that effort is limited to ascertaining whether he was a borrowed servant of the United States. The burden of undertaking

5

any discovery necessary to determine his status is not sufficient to warrant withholding of leave to amend by the Court, particularly where the matter at issue might dispose of the case at bar. Accordingly, the United States asks that the Court allow the filing of the Amended Answer of Defendant United States of America, which is attached as Exhibit A.

## CONCLUSION

Based on the foregoing, the United States prays that the Court allow it to amend its Answer, if necessary, to include its Seventh Affirmative Defense: By application of the borrowed servant doctrine, plaintiff's exclusive remedy against defendant are the benefits available to him under the Longshore and Harborworkers' Compensation Act ("LHWCA"), 33 U.S.C. §§ 901-950.

Dated: December **23**, 2003.

                Respectfully submitted,

                PETER D. KEISLER
                Assistant Attorney General

                JOHN A. DANAHER, III
                United States Attorney

                BRENDA M. GREEN
                Assistant United States Attorney

                */s/ Michael A. DiLauro*
                MICHAEL A. DILAURO, Trial Attorney
                Federal Bar No. CT 23607
                STEPHEN G. FLYNN, Trial Attorney
                U.S. Department of Justice
                Post Office Box 14271
                Washington, D.C. 20044-4271
                Tel. (202) 616-4019
                Fax. (202) 616-4159
                Counsel for the United States

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a copy of the foregoing was sent by Federal Express this 23rd day of December 2003, addressed to the following counsel of record:

>Eric J. Land, Esq.
>Embry & Neusner
>118 Poquonnock Road
>Groton, CT 06340
>Tel. (860) 449-0341

*Michael A DiLu*
MICHAEL A. DILAURO, Trial Attorney

7